STATE, ex rel. CARY D. LANDIS, Attorney General, v. FLORIDA FERRY COMPANY.

175 So. 811.
Division A.
Opinion Filed July 29, 1937.

*P. H. Odom*, for Plaintiff.

*Milam, McIlvaine & Milam* and *George Couper Gibbs*, for Defendant;

*Julian Fant, R. A. Baker* and *Wm. H. Rogers*, as *amici curiae*.

PER CURIAM.—This case is before us on demurrer to pleas filed in the quo warranto proceedings.

The information, in the nature of writ of quo warranto, was as follows:

"Cary D. Landis, Attorney General of the State of Florida, who sues for and in behalf of the State of Florida and the people thereof, comes before this Honorable Court, and for said State and the people thereof, gives the Court here to understand and be informed that Florida Ferry Company, a corporation under the laws of the State of

Florida is now, and for more than five years last past has been, operating a ferry across the St. Johns River in the City of Jacksonville from the foot of Main Street on the north side of said river, to Flagler Street on the south side of said river, without legal leave, license or franchise for the establishment, maintenance and operation of such ferry by said company, under and in pursuance of the provisions of Chapter 5185 of the Laws of Florida, to-wit, Sections 2754 and 2756, both inclusive, of the Compiled General Laws of Florida, the leave, license and franchise for the establishment and maintenance and operation of said ferry by the Florida Ferry Company, and its predecessors having expired during the year 1930, or prior thereto; that during said time the Florida Ferry Company has used, enjoyed, exercised and performed, and still does enjoy, exercise, use and perform, without warrant or authority of law, and in violation of the Constitution of the State, right, privilege and franchise of collecting tolls and charges for the use of said ferry. Said tolls and charges which are so illegally collected would inure to the benefit of the present bridge across the St. Johns River in the City of Jacksonville, now owned and operated by Duval County as a toll bridge, to the great damage and prejudice of the people of the State of Florida.

"And the said Attorney General of the State of Florida, who prosecutes as aforesaid, further gives the Court to understand and be informed that the said Florida Ferry Company for the space of more than 30 years, has maintained and operated said ferry in an illegal manner; and is now collecting, and during said time has collected, tolls and charges for the use of said ferry for other than teams and passengers, to-wit, automobiles, trucks and other motor driven vehicles, and freight of various kinds, contrary to the Constitution of the State of Florida, and to the pro-

visions of said Chapter 5185 of the laws of the State of Florida, to the great damage and prejudice to the State of Florida and the people thereof.

"And the said Attorney General, who prosecutes as aforesaid, further gives the Court to understand and be informed that the said Florida Ferry Company now occupies the full width of Main Street at the foot thereof, for its northern terminus, to the exclusion of the public, except those using said ferry, and has so occupied and used the same for more than 30 years last past, on a revocable permit from the City of Jacksonville, which permit was cancelled. by Chapter 17246 of the Laws of Florida, Acts of 1935, and Senate Bill No. 999 of the Laws of Florida, Acts of 1937, and the said ferry company, contrary to the laws of the State of Florida and its Constitution, claims to have an exclusive and perpetual franchise for the use of the foot of said street, to the great damage and prejudice of the State of Florida and the people thereof; that the exclusive right to use the foot of said street is now vested in Duval County and the State Road Department of the State of Florida.

"Whereupon, the said Attorney General prays the advice of this Court in the premises, and that due process of law issue against said Florida Ferry Company in this behalf to be made, to answer to the State of Florida and the people thereof, by what warrant or authority it claims to use, enjoy, exercise and perform the leave, license, franchise and functions aforesaid."

Order to show cause was issued. Thereupon, three pleas were filed. The pleas were lengthy, but it appears to us expedient to set them out in full, which we do. The pleas are as follows:

"FIRST PLEA.

"For a first plea to the said information, this defendant says that it is true that this defendant is a corporation

under the laws of the State of Florida and is now and for more than five years last past has been operating a ferry across the St. Johns River in the City of Jacksonville, from the foot of Main Street on the north side of said river, to Flagler Street on the south side of said river, and that said defendant does collect the tolls prescribed by the County Commissioners of Duval County, Florida, for the operation of said ferry, and with its predecessors and grantors in the franchise has maintained the said ferry for more than thirty (30) years last past, and still maintains the same under and by virtue of the provisions of Chapter 5185 of the Laws of the State of Florida and proceedings had and franchise granted by and under the terms of said Act, as hereinafter more particularly set forth in detail.

"This defendant specifically denies each and severally the following allegations of said Information: That this defendant is now and for more than five years last past has been operating such ferry across the St. Johns River at Jacksonville as alleged, without legal leave, license or franchise, for the establishment, maintenance and operation of such ferry by this defendant under the statutes; that the leave, license and franchise for the establishment and maintenance and operation of said ferry by this defendant and its predecessors expired in 1930, or prior thereto; that during said time this defendant has used, enjoyed, exercised and performed and still does without warrant or authority in law and violation of the Constitution of the State, the right, privilege and franchise of collecting tolls and charges for the use of said ferry; that said tolls and charges are illegally collected and would inure to the benefit of the County Bridge across the St. Johns River at Jacksonville; that the defendant has maintained and operated said ferry in an illegal manner and is now collecting and for thirty years has collected tolls and charges for the use of said

ferry for automotive vehicles and freight contrary to the Constitution and statutes of the State of Florida, and to the damage of the people of the State of Florida; that this defendant occupies the full width of Main Street at the foot thereof and has so occupied the same as alleged on a revocable permit from the City of Jacksonville; that the permit or right of this defendant to so use the foot of Main Street or to operate said ferry was cancelled by Chapter 17246. Laws of Florida, Acts of 1935, or by Senate Bill 999, Laws of Florida, Acts of 1937; or that the exclusive right to use the foot of Main Street is now vested in Duval County and in the State Road Department of the State of Florida; and as to each of the aforesaid allegations and averments this defendant specifically and expressly denies the same and says that the same are untrue and on the contrary this defendant avers that it is now legally vested and seized of the franchise and right aforesaid to operate its ferries across the St. Johns River and in the City of Jacksonville from the foot of Main Street on the north side of said river, to Flagler Street on the south side of said river, and to charge and receive tolls therefor by virtue of each and every of the following circumstances, matters, facts and proceedings, which are, and each of them, true, that is to say:

"(a) For more than thirty (30) years this defendant and its predecessors and grantors have been operating a ferry across the St. Johns River from the foot of Main Street in Jacksonville to the foot of Flagler (or Davis) Street in South Jacksonville, now a part of the City of Jacksonville, and throughout such thirty years have adequately served the public in the ferriage of passengers, teams, wagons, automobiles and other personnel and property, as authorized by its ferry franchise and as directed from time to time by

the Board of County Commissioners of Duval County, Florida.

"Such ferry franchise was granted to the South Jacksonville Ferry Company, this defendant's predecessor and grantor, by the Board of County Commissioners on March 15, 1905, under the provisions of Chapter 5185, Laws of Florida, Acts of 1903. A certified copy of the Minutes of the meeting of the Board of County Commissioners of Duval County, Florida, of March 15, 1905, including the opinion of its attorney, Judge Wm. B. Young, and the resolution duly passed of the Board of County Commissioners granting the franchise and prescribing the schedules to be observed, the rates to be charged for ferriage, the character and capacity of the boats to be used, the duration of the franchise and the other terms and conditions thereof, all as recorded in Minute Book 1, page 344, *et seq.,* of the Minutes of said Board, is hereto attached as Exhibit 'A' and by reference made a part hereof. Said franchise as embodied in Exhibit 'A' will be referred to herein as 'said franchise of March 15, 1905.'

"(b) On the 5th day of November, 1905, the City of Jacksonville did duly enact an ordinance, No. H 37, with respect to the said South Jacksonville Ferry Company, which ordinance has become Section 1706 of the City Code of Jacksonville duly adopted August 16, 1927. A copy of said ordinance H 37 (Section 1706, City Code) is hereto attached as Exhibit 'B' and by reference made a part hereof.

"The franchise of March 15, 1905, granted by said Board of County Commissioners, subjected the said South Jacksonville Ferry Company only 'to police regulations of the City of Jacksonville as to character of buildings at the foot of Main Street.' Pursuant thereto said buildings and terminal were constructed in accordance with said require-

ments and regulations. No arbitration has ever been called for by said City or notice given thereof.

"Subsequently, by legislative Act, the City of South Jacksonville was merged into the City of Jacksonville, which thereby was vested with all the powers and jurisdictional authority theretofore pertaining to and charged with all the contracts and commitments of the City of South Jacksonville.

"(c) The South Jacksonville Ferry Company on, to-wit, October 17, 1912, by deed duly recorded in Deed Book 100, page 509, of the public records of Duval County, Florida, did grant, sell, assign and transfer unto the Jacksonville Ferry and Land Company, a corporation of Florida, said leave, license and franchise so granted to South Jacksonville Ferry Company by the Board of County Commissioners of Duval County, Florida, on March 15, 1905, or on any other dates, for the operation of a ferry across the St. Johns River between the City of Jacksonville and the City of South Jacksonville, Florida, together with all amendments, additions, or supplements to said franchise at any time given or made by said County Commissioners to or held by the said South Jacksonville Ferry Company, a certified copy of said deed being hereto attached, marked Exhibit 'C' and by reference made a part hereof; and on said date of October 17, 1912, by deed duly recorded in Deed Book 100, page 511, of the public records of Duval County, Florida, the said South Jacksonville Ferry Company did grant, sell and transfer to said Jacksonville Ferry & Land Company all its rights acquired from the City under said Ordinance H 37.

"That on, to-wit, the 7th day of January, 1925, the Jacksonville Ferry & Land Company, a corporation of Florida, did likewise grant, sell, transfer and convey unto this Defendant Florida Ferry Company, the said leave, license or

franchise for such ferry service hereinabove specified and conveyed to it, together with all amendments, additions and supplements to said franchise, by instrument bearing said date and duly recorded in the public records of Duval County, Florida, in Deed Book 265, page 680, a copy of said deed being hereto attached as Exhibit 'D' and by reference made a part hereof.

"The said South Jacksonville Ferry Company and said Jacksonville Ferry & Land Company are herein referred to as the defendant's 'predecessors and grantors.'

"By resolution duly passed on January 12, 1925, and recorded in Minute Book 9, page 556, et seq., of the said Board, the assignment and transfer of said franchise from the Jacksonville Ferry & Land Company to this defendant, Florida Ferry Company, was recognized and the cancellation of the existing bond was authorized and the substitution of a new bond by the Florida Ferry Company was authorized, and said bond at said meeting tendered and approved as to form by John E. Mathews, the Board's attorney, was accepted, approved and filed, and is now a valid and subsisting bond.

"(d) That this defendant is a corporation duly organized and existing under the laws of the State of Florida under charter issued December 31st, 1924. That by its said charter this defendant is authorized to engage in the business of operating and owning ferry boats for the transportation for hire and reward of passengers and freight, vehicles and other kinds of property on the St. Johns River in Duval County, Florida, between the Cities of Jacksonville and South Jacksonville in said Duval County, and in that behalf to own and operate licenses, franchises and easements granted by any public authority or person to operate ferry boats, ferry lines and other means of transportation; and generally to engage in the business of ferriage; that the

said predecessors and grantors of this defendant were corporations of Florida and by their charters were given equivalent and similar powers.

"(e) By the terms of said Chapter 5185, Laws of Florida, Acts of 1903, the Board of County Commissioners of any County within the State of Florida, whenever it appeared to them that the convenience of the public required the maintenance of a ferry across any river between two points on opposite sides of the river in said county was given the power and on it was imposed the duty by resolution to grant a leave, license and franchise for the establishment and maintenance of such ferry by a grantee named in such resolution from a street or public road on one side of the river to a street or public road on the other side of the river for the term and upon the conditions stated in said Act. This defendant shows that it appears from its franchise aforesaid that the Board of County Commissioners of Duval County, Florida, determined and found that the convenience of the public required the maintenance of .a ferry for teams and passengers across the St. Johns River in Duval County, Florida, between two points on opposite sides of said river, both of which were and still are ·within Duval County, Florida. That accordingly it did grant the aforesaid leave, license and franchise to the South Jacksonville Ferry Company 'for the establishment and maintenance and operation of such ferry,' across the St. Johns River from Ferry Street in South Jacksonville to Main Street in the City of Jacksonville, two towns on opposite sides of the St. Johns River within Duval County, Florida, and back and forth between said towns, both Ferry Street and Main Street being streets or public roads on opposite sides of said St. Johns River. By said Act of 1903, the grantee thereof was made to include successors and assigns of the original grantee.

"That the said franchise to South Jacksonville Ferry Company as appears by Exhibit 'A' hereto attached was in substitution of vested rights and franchise theretofore and then existing and enjoyed by the said South Jacksonville Ferry Company; and this defendant's said grantor brought itself and thereby this defendant under the operation of said Chapter 5185 with its attendant privileges, rights and powers.

"(f) By said Chapter 5185, Acts of 1903, the grantee was required to furnish bond to be approved by the County Commissioners, conditioned for the establishment, mainte-nance and operation 'of a ferry of character to meet the reasonable necessities of the public.' Such bond was furnished and the requisite bond is now valid, subsisting and on hand with the Board of County Commissioners. In order to meet the reasonable necessities of the public, the said County Commissioners provided, as appears in said franchise, that such ferry do transport wagons, vehicles, bicycles and automobiles, and since the inception of said franchise, this defendant and its predecessors and grantors aforesaid under authority of the Board of County Commissioners and at its direction, have transported under said franchise automobiles and other said vehicles and have met the reasonable necessities of the public in that regard.

"(g) By said Chapter 5185, Acts of 1903, the Board of County Commissioners was required by resolution giving and granting such franchise to fix the schedules to be ob-served 'and the rates to be charged for ferriage' and the character and capacity of boats 'and make such other reg-ulations as may appear to them to be reasonable.' This the Board of County Commissioners did at the time of granting the franchise aforesaid. By such franchise so granted March 15, 1905, by said Board of County Com-missioners rates were fixed for lumber wagons and teams,

for horse and rider, for flour, feed, groceries, oil, containers of freight, trunks and small packages, as well as for bicycles and automobiles. No less than 19 classes and rates of ferriage were fixed for automobiles, covering one-way tickets, commutation tickets, round-trips, automobiles less than 1000 pounds, between 1000 and 1400 pounds, two-seated automobiles, automobiles between 1400 and 2000 pounds, and touring cars and racing machines weighing 2000 pounds and over. Thus at the time of granting the franchise in pursuance of the said Act of 1903 requiring the Board of County Commissioners to establish a ferry to meet the reasonable necessities of the public and fix the rates to be charged for ferriage, the necessity of carrying and transporting automobiles, wagons, bicycles and freight, was recognized and provided for, the rates were fixed, and beginning then and ever since for more than thirty years this defendant and its said grantors have in pursuance of said franchise and the direction of said Board of County Commissioners transported in ferriage such property and vehicles.

"(h) By said Act of 1903, the Board of County Commissioners is given the further right by agreement or arbitration to control the character of the services required to be given by such grantee of the ferry franchise and specifically the County Commissioners and the grantee of such franchise are given the right at any time, without arbitration, to make, by resolution, of the County Commissioners approved by the grantees, 'any arrangement that they deem mutually advantageous to all concerned affecting such ferry service.' This defendant shows that in pursuance of such provision, the South Jacksonville Ferry Company duly accepted said franchise and at that time, as appears by Exhibit 'A' hereto attached, did accept and approve the arrangements made by resolution of the Board

of County Commissioners and deemed mutually advantageous, that is to say, an arrangement for transporting wagons, automobiles and other vehicles upon said ferry and under said resolution did establish tolls therefor.

"Thereafter from time to time this defendant and its predecessors and grantors on the one hand and the Board of County Commissioners of Duval County on the other hand, did adopt arrangements that they deemed mutually advantageous having to do with, and authorizing and requiring transportation on said ferry and under said franchise of various vehicles including automobiles.

"A typical arrangement is embodied in resolution of the Board of County Commissioners of Duval County, Florida, unanimously adopted September 29th, 1920, approved by said Jacksonville Ferry & Land Company, and appearing in Minute Book 7, page 508, *et seq.,* of the proceedings of said Board, whereby it appeared that dispute had arisen between said Board and Jacksonville Ferry & Land Company as to the reasonableness of rates being charged, and after negotiation and without arbitration, it appeared mutually advantageous to all concerned to establish and readopt other and different rates, and accordingly a new schedule of rates was so adopted by said Board and the Jacksonville Ferry & Land Company, all as appears by certified copy of said resolution attached hereto as Exhibit 'E' and by reference made a part hereof. Said resolution so passed had been and was approved by said Jacksonville Ferry & Land Company. It established toll rates for motorcycles, lumber wagons, livestock, as well as for automobiles and auto trucks. Three classifications were established for automobiles depending upon the wheel base, and ten different rates prescribed therefor. Four classifications were established for auto trucks depending upon tonnage and similarly ten different rates established therefor. This arrange-

ment for the carriage by said Ferry Company of automobiles, motor trucks and motorcycles was deemed mutually advantageous and for the convenience of the public as appears by said resolution, and was an arrangement adopted under said Act of 1903, and has been observed by said Jacksonville Ferry & Land Company and this defendant and by the said Board of County Commissioners for more than sixteen years last past.

"(j) That by resolution adopted August 7, 1907, and appearing in Minute Book 1, page 599, *et seq.*, of the proceedings of the Board of County Commissioners of Duval County, Florida, said Board found it necessary for the public convenience and mutually advantageous to the Board of County Commissioners and the Ferry Company to move the South Jacksonville landing from the foot of Ferry Street to the foot of Davis Street, and accordingly by said resolution duly passed by said Board and approved by the South Jacksonville Ferry Company, the southside landing of the ferry was changed and transferred to the old ferry landing at the end of Davis Street, now Flagler Street, in the City of South Jacksonville, and the Ferry Company was thereby required to operate its ferry boats to and from such changed landing and was required for the term of its franchise to maintain a 'good and sufficient hard surface road for vehicles and animals from its dock to Davis Street,' and it was further provided thereby that 'the public shall have and enjoy in said ferry terminal all rights of every kind usually had and enjoyed by the public in ferry terminals elsewhere.' A certified copy of said resolution and the acceptance thereof by the Ferry Company is hereto attached as Exhibit 'F' and by reference made a part hereof. From the date thereof until this time, this defendant and its said predecessors and grantors have continued to operate said ferry from the old

ferry landing at the end of Davis Street (now Flagler Street in South Jacksonville) and has maintained and caused to be maintained a good and sufficient hard-surfaced road for vehicles, including automobiles, and animals as required therein.

"When the said franchise was granted in the year 1905, it established the Jacksonville landing of said ferry at the foot of Main Street in Jacksonville. At no time thereafter has a thing been changed and for more than thirty years this defendant has enjoyed the operation of its ferry from that point, which is centrally located in the said City of Jacksonville, and an enormous patronage has been built up upon said location and such patronage continues to exist.

"(j) By said Act of 1903 the manner in which said franchise might be terminated was set out. In this connection it was provided by said Act that the said County Commissioners might submit to the voters of the County at the general election next preceding the expiration of said term of fifteen years, the question as to whether or not the County Commissioners should purchase the property used and operate the ferry, and if the majority of the voters voting on the subject should have voted for the purchase and operation of the ferry by the County, then the County Commissioners and the grantees of the franchise should each name an arbitrator and the two arbitrators so named should name a third, a disinterested person of high standing and integrity, and these arbitrators, unanimously or by majority, should investigate and fix the amount to be paid by the County to the grantee, whereupon the County Commissioners should pay to the grantee the amount so fixed and should receive from the grantee a conveyance of all of its property used for ferry purposes. But should the electors of the County at such election fail to approve the purchase and operation of such ferry, or should the

County Commissioners for any reason fail to make such purchase, the grantee should have the right to continue the operation of such ferry, with all the rights granted by said Act and subject to all the provisions of the Act as to arbitration, etc., for an additional term of ten years 'and until the county shall by vote of its electors have determined to purchase and operate such ferry and shall have paid to the grantee the amount fixed by arbitration as provided herein.' Neither at the general election next preceding the expiration of said term of fifteen years or the said term of ten years, nor at any other time, have the County Commissioners of Duval County submitted to the voters of the County the said question as to purchase of ferry, nor have any arbitrators been named, nor has any price been fixed for the purchase of this defendant's franchise and property used for ferry purposes; and under said Act and its said franchise Exhibit 'A,' this defendant has continued to maintain and operate said ferry. The said County Commissioners have failed to make such purchase contemplated by said Act and this defendant has the right to continue to operate such ferry, under its said franchise and said Act with all the rights attendant thereto, until the County or some instrumentality of the State in the manner prescribed or other legal means shall have determined to purchase said ferry and shall have paid this defendant just compensation legally determined by arbitration. This attempt to forfeit its said franchise and rights is an invasion of its property rights, and seeks to impair the obligation of its contract, to defeat its franchise, to take its property without just compensation and is without warrant and sanction in law.

"(k) That the defendant's said predecessor, South Jacksonville Ferry Company, furnished the bond required by said Act of 1903, and the same was approved by the Board

of County Commissioners on April 5, 1905, at which date the said franchise became effective and since that time the said bond or its proper renewal or later a substituted bond by this defendant, duly approved as aforesaid, has been in existence, valid and subsisting and is now in the possession of said Board conditioned as aforesaid.

"(1) This defendant has performed and fulfilled all conditions precedent and all events and things have existed and happened to entitle it to the said franchise and to its continued existence. Said franchise is now valid and subsisting and has never been forfeited nor have any proceedings to compel its forfeiture been taken, save and except this present proceeding before the Supreme Court.

"SECOND PLEA.

"For a second plea to the said Information, this defendant realleges herein all and singular the averments, matters and things hereinabove alleged in the First Plea, in all respects as if copied at length herein, and in addition thereto alleges:

"By said Act of 1903 (and the said resolution of the Board of County Commissioners of March 15, 1905, following the literal wording of the said Act of 1903) it was provided that such franchise, unless adjudged by the Court forfeited for failure to comply with terms and conditions thereof (and defendant's franchise has not been so adjudged forfeited) should run and continue for the full term and period of fifteen years and thereafter until the County Commissioners shall have terminated the franchise in the manner provided in said Act. The said County Commissioners have not terminated said franchise in the manner provided in said Act, nor otherwise, but on the contrary for more than three decades have recognized and approved said franchise and exercised the control thereof as aforesaid.

"Not only was the carriage of automobiles by said ferry authorized and recognized by the said resolutions of the Board of County Commissioners of Duval County, Florida, of March 15, 1905, and September 29, 1920, as aforesaid, but · at· divers other times. For example: By resolution dated October 12, 1922, duly passed, recorded in Minute Book 8, page 576, of said Board, the said Board of County Commissioners, with the approval of the said Jacksonville Ferry & Land Company, did expressly recognize annd require the ferriage of automobiles.

In reliance upon said franchise and said Act of 1903 and in compliance with the provisions of said franchise and of said Act, and in pursuance of the requirements of said Board of County· Commissioners that it do meet the reasonable necessity of the public and provide adequate and reasonable transportation across the St. Johns River at Jacksonville, Florida, this defendant has invested large sums of money in the purchase of property used in the operation of said ferry, in docks, landing stages, recreation piers, waiting rooms, paving, boats, ships, equipment and property, in order that without cessation it could fully, completely and adequately serve the needs of the traveling public in ferriage at said location; and it has maintained and continues to maintain in good operating condition its said property and equipment, and conducts and maintains its operating personnel and ·business to accomplish that end. This attempt to forfeit its said franchise and rights would entirely destroy the value of this defendant's business so organized and conducted as aforesaid and the value of its said property, except as salvage, and would render valueless its large investment made in reliance upon said franchise in said Act in the creation and conduct of its said business for the serving of the public.

"When the said franchise was granted there was no high-

way bridge across the St. Johns River at Jacksonville, and the ferry service then operated by the South Jacksonville Ferry Company, a continuation of which was authorized by said franchise of March 15, 1905, was the only public ferry across the St. Johns River at Jacksonville. At the outset it was recognized that the necessities of the public required that vehicles, including automobiles, be transported and at the outset rates for such ferry service were established and fixed. From that date until this it has never been questioned that it was not only the right of the ferry company to transport automobiles and vehicles but it was required of it as a duty and this defendant shows that it could not have refused to transport automobiles but would have been required to so transport them, and rightfully so.

"For some twenty years this defendant and its grantors served the public in traversing and crossing the river at Jacksonville, Florida, and it was the only public service rendered for that purpose. About 1922, the St. Johns River Bridge was completed and since that time has been operated as a toll bridge serving the public as a highway across said river. The said bridge was not centrally located and its building and operation did not displace or abrogate the ferry service centrally located at the foot of Main Street in Jacksonville. Since the erection of the St. Johns River Bridge, this defendant has continued to serve the public in ferriage across said river as aforesaid under its franchise, and its service has been supplemental to that rendered by such toll bridge and in addition has constituted an alternative service in case the said bridge became so damaged by storm, ships, or otherwise, that it could not be traversed, and in this way has constituted an assurance that there will always exist a method of traversing the river at Jacksonville.

"THIRD PLEA.

"For a third plea to the said Information, this defendant realleges herein all and singular the averments, matters and things hereinabove alleged in the First Plea and in the Second Plea, in all respects as if copied at length herein, and in addition thereto alleges:

"It is not true that the said Acts of 1935 (Chapter 17246) or the Acts of 1937 (Senate Bill 999) cancelled the permit or franchise of this defendant for the operation of said ferry as aforesaid or for the use of the foot of said Main Street, but on the contrary defendant alleges that for some years public interest has demanded another bridge across the St. Johns River at Jacksonville and such interest has crystallized in legislation to that end. Because of its central location in the heart of the City, such legislation has provided that this additional bridge be erected at the foot of Main Street. Accordingly the first Main Street Bridge Act was passed in 1931 (Chapter 15189) the Second Main Street Bridge Act in 1933 (Chapter 16402), the Third Main Street Bridge Act in 1935 (Chapter 17246), and the Fourth Main Street Bridge Act in 1937 (Senate Bill 999), all contemplating and authorizing construction, under certain conditions, of a bridge from the foot of Main Street on the Jacksonville side across the river to South Jacksonville, either by private capital or by the State Road Department or instrumentality of the State, through Federal aid, or otherwise. These various legislative Acts concerning the Main Street Bridge have recognized the existence of the franchise and rights in Florida Ferry Company, this defendant, and the necessity of acquiring by purchase or condemnation or arbitration or otherwise such rights and property. Said Act of 1931 recognized the existence of such franchise and, subject to the provisions of such Act, provided that 'the franchise and right of Florida Ferry

Company to operate ferry service between the cities of Jacksonville and South Jacksonville is hereby extended and enlarged to include the construction, maintenance and operation of a toll bridge.' (Section 1). Said Act of 1933, in exactly similar language, recognized the existing franchise and right of the Florida Ferry Company. Said Acts of 1935 and 1937 authorized Duval County to exercise the right of eminent domain to condemn any franchises necessary for the construction of a bridge at Main Street; and said Act of 1937, in addition, provided that as soon as practicable after said Act became effective Duval County should institute proceedings in the Circuit Court of Duval County, Florida, for the condemnation of any franchises necessary for the construction of the bridge at the foot of Main Street and authorized it to institute and prosecute other suits as the Board might deem necessary to determine the rights of the owners of said ferry to the area embraced in the right of way of said bridge (Sections 2, 3 and 4). All of said Acts of the legislature recognized the existing franchise and rights of this defendant and the necessity of condemning the same. This Information in the nature of quo warranto is the first attempt ever made in the more than thirty-two years of the existence of said franchise of March 15, 1905, whereunder service has been so long and efficiently given, to deny its validity or seek its foreclosure.

"WHEREFORE, this defendant says and shows unto this Honorable Court that it has not and does not usurp the right of franchise and privilege mentioned and described in said Information, but on the contrary it is lawfully and legally seized thereof and is exercising the same according to the rights guaranteed and granted by the Constitution and Laws of the State of Florida, and of the United States."

To these pleas demurrers were filed as follows:

"As to First Plea:

"1. The facts alleged in the plea are insufficient to show that the defendant has a legal franchise to operate a ferry as alleged.

"2. The franchise granted to the defendant and its predecessors under the provisions of Chapter 5185, Acts of 1903, Sections 2754 and 2756, both inclusive, of the Compiled General Laws of Florida, is limited to fifteen years.

"3. The fourth paragraph of Section Two of Chapter 5185, (Section 2755, Compiled General Laws of Florida) is an attempted delegation of power, which is unconstitutional and void.

"4. Ordinance No. H-37 is *ultra vires*.

"5. Paragraph Three of Ordinance H-37 is void for the reason that it is an attempted delegation of power, which is unlawful.

"6. The facts alleged are insufficient to show that the defendant has a legal right to occupy and use the foot of Main Street.

"7. Chapter 17246 and Senate Bill 999 terminated whatever rights the defendant may have had to occupy and use the foot of Main Street as a terminal for its ferry.

"8. All arbitration powers in Chapter 5185 are unconstitutional.

"9. All arbitration powers referred to in said ordinance are illegal.

"As to Second Plea:

"1. The franchise of the defendant is measured by the provisions of Chapter 5185, Sections 2754 to 2756, both inclusive, of the Compiled General Laws of Florida, which are not unconstitutional, and the franchise cannot be amended or enlarged by usage or by agreement with the Board of County Commissioners of Duval County.

"2. The statute of limitations does not apply to the State.

"3. Rights of usurpation of sovereign powers do not accrue by estoppel.

"As to Third Plea:

"1. Under Section 20 of Article 3 of the State Constitution, no special or local law can be passed for the establishment of ferries.

"2. Chapter 15169 is unconstitutional, as the same was not passed in accordance with the Constitution, as notice was not given as required by Section 21 of Article 3 of the State Constitution.

"3. Chapter 16402 was defeated at the election therein provided for, and never became effective.

"4. Neither Chapter 17246 nor Senate Bill 999 ratifies, approves or recognizes the franchise of the defendant. The condemnation therein referred to was provided to meet the requirements of Section 29 of Article 16 of the State Constitution."

The Court having considered the pleadings, the brief presented and the argument of counsel at the bar of the court, and being advised of its judgment which should be given herein, it is ordered, adjudged and decreed that the allegations of the pleas are sufficient to constitute a valid defense on behalf of the respondents. Therefore, the demurrer interposed to the said pleas should be and is overruled.

It is further ordered, adjudged and decreed that relator shall have ten (10) days from the filing of this order in which to join issue upon, or otherwise reply to, said pleas, and that failing to do so, the rule *nisi* issued herein will be quashed and the cause dismissed.

So ordered.

874

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur.

BROWN and CHAPMAN, J. J., concur in the opinion and judgment.